IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED
IN OPEN COURT

AUG - 4 2016

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2:16cr69 |
| ) | |
| SAMUEL PIERRE, ) | |
| ) | |
| Defendant. ) | |

## STATEMENT OF FACTS

The parties stipulate that the allegations in Counts Eight and Eleven of the pending indictment and the following facts are true and correct, and that had the matter gone to trial the United States would have proven them beyond a reasonable doubt.

### Background Information

1. The defendant, SAMUEL PIERRE, was licensed to sell insurance in the Commonwealth of Virginia from August 3, 1995, to August 1, 2014.

2. Mutual of Omaha Insurance Company (Mutual of Omaha) is a company engaged in the business of providing life insurance policies, critical illness insurance policies, annuities, and other insurance products to clients. Monumental Life Insurance Company (Monumental Life) was a company similarly engaged in sale of insurance products. On July 31, 2014, Monumental Life changed its name to Transamerica Premier Life Insurance Company (Transamerica).

3. ASPECT Management is a field marketing organization – an independent company engaged by insurance companies to recruit and support licensed insurance agents to sell their products. ASPECT Management, which is based in Columbia, South Carolina, is contracted with both Mutual of Omaha and Monumental Life/Transamerica. The contracts

between ASPECT Management and these two insurance companies place on ASPECT the end responsibility for any debt incurred by one of ASPECT's agents.

4. Beginning in or about June 2012, PIERRE, worked through ASPECT Management to sell the insurance products of both Monumental Life and Mutual of Omaha.

### PIERRE's Scheme

5. Beginning in approximately June 2012 and continuing until at least July 2014, the defendant, SAMUEL PIERRE, devised a scheme to obtain commission payments to which he was not entitled from Monumental Life and Mutual of Omaha. Specifically, PIERRE took advantage of the insurance industry practice and custom of paying advanced commission fees to agents before an insurance application had been fully completed and vetted.

6. In order to effectuate his scheme, PIERRE obtained the personally identifiable information – including names, dates of birth, and Social Security Account Numbers, among other information – from acquaintances under the auspices of applying for free or reduced price life insurance on their behalf, or for obtaining free legal services on their behalf.

7. PIERRE would then fraudulently use this information to apply for life insurance policies, critical illness insurance policies, deferred annuities, and other products offered by Monumental Life and Mutual of Omaha. At times, he requested that the acquaintance for whom he was applying for insurance sign blank application forms. On other occasions, PIERRE would simply forge, or cause to be forged, the individual's signature. The defendant would then fund these fraudulent applications with checks drawn on invalid or closed bank accounts, with stolen checks, with money orders, or with other forms of payment. PIERRE submitted the fraudulent applications by mail or facsimile.



8. After the receipt of the applications and associated form of payment, but before the form of payment had cleared the bank, the insurance company would pay the defendant an advance on his commission fee.

9. The policies obtained by PIERRE's fraudulent applications would quickly lapse due to non-payment or be promptly cancelled, and PIERRE would be required to return the advance on his commission fee. Rather than reimburse the insurance companies, however, PIERRE would keep the commission fee advances for his own personal benefit.

<u>Deferred Annuity Application for M.H.</u>

10. By way of example, and as described in Count Eight of the indictment, in the spring of 2014, PIERRE approached M.H. under the auspices of obtaining a free life insurance policy on her behalf. PIERRE represented that he would make all the premium payments for M.H. and that all she needed to do was to provide him her Social Security Account Number. M.H. agreed and gave PIERRE the requested information. She did not complete, nor sign, any applications or other documents, and did not receive any paperwork in the mail regarding any insurance policies. In fact, M.H. did not hear from PIERRE again about this purportedly free life insurance policy.

11. On May 25, 2014, PIERRE submitted to Mutual of Omaha an Individual Flexible Purchase Payment Deferred Annuity Application in the amount of $390,000 in the name of M.H. The application included M.H.'s date of birth, Social Security Account Number, and other identifying information. M.H. did not complete, nor sign, this application. PIERRE mailed this application from a location in the Eastern District of Virginia to Mutual of Omaha's headquarters in Omaha, Nebraska.



12. In connection with the application, PIERRE submitted to Mutual of Omaha a check dated June 10, 2014, for $390,000, which was drawn on a Wells Fargo Bank account ending in -9304. Though the check purported to be signed by M.H., M.H. did not sign the check, is not the account holder for Wells Fargo account -9304, and had no knowledge of the check or her signature on it until approached by law enforcement agents investigating PIERRE's scheme. This check did not clear the bank.

13. In truth, Wells Fargo account -9304 belonged to an individual named M.R. On May 22, 2014, M.R. reported that the checkbook associated with the account had been stolen. When interviewed by law enforcement agents, M.R. indicated that she did not know M.H. and had not given permission for her checkbook to be used to fund insurance product applications.

14. Mutual of Omaha paid PIERRE a commission fee $13,650 for his sale of the deferred annuity to M.H. Because the check funding the deferred annuity was not valid, the deferred annuity was cancelled by Mutual of Omaha. PIERRE did not return the commission fee.

## Conclusion

15. In total, PIERRE utilized the names and identifiers of approximately 110 unique individuals to perpetrate his scheme.

16. Based on PIERRE's fraudulent applications and retention of the advanced commission fees, Monumental Life and Mutual of Omaha suffered substantial losses. Pursuant to the contract with ASPECT, these substantial losses were then assigned to ASPECT Management for repayment.

17. The losses to Mutual of Omaha, Monumental Life, and ASPECT Management as a result of PIERRE's scheme totaled more than $150,000, but less than $250,000.



18. In perpetrating his scheme, the defendant frequented OfficeMax locations in Chesapeake and Virginia Beach, Virginia, to both mail and fax fraudulent insurance applications to the insurance companies.

19. Chesapeake and Virginia Beach, Virginia, are in the Eastern District of Virginia.

20. The acts taken by the defendant, SAMUEL PIERRE, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to violate the law and were not committed by mistake, accident, or other innocent reason. The defendant acknowledges that the foregoing Statement of Facts includes those facts necessary to support the plea agreement between the defendant and the government. It does not describe all of the defendant's conduct relating to the offense charged in this case, does not identify all of the persons with whom the defendant may have engaged in illegal activities, and is not intended to be a full enumeration of all the facts surrounding the defendant's case.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: *V. Kathleen Dougherty*
V. Kathleen Dougherty
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail - v.kathleen.dougherty@usdoj.gov

*United States v. Samuel Pierre*, 2:16cr69

<u>Defendant's Signature</u>: After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States, and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

X_____
SAMUEL PIERRE

<u>Defense Counsel's Signature</u>: I am SAMUEL PIERRE's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Kirsten R. Kmet
Counsel for Defendant

